UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH COY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LILITH GAMES (SHANGHAI) CO., LTD., et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-08192-JD<br><br>**ORDER RE MOTION TO DISMISS** |

Plaintiffs Keith Coy, James Moran, and Casey Meigs, on behalf of themselves and a putative national class, have sued defendants Lilith Games Co. Ltd. and Shanghai Lilith Network Technology Co., Ltd. (Lilith) for deceptive practices in connection with the mobile video game, Rise of Kingdoms (ROK). In a nutshell, the named plaintiffs say they were duped into spending thousands of dollars on in-game purchases of "gems" to play rigged "loot box" card and wheel games that had unfavorable odds for players. Lilith initially contested personal jurisdiction in this District but voluntarily dropped that objection. Dkt. No. 65. Lilith now asks to dismiss the first amended complaint (FAC) under Federal Rule of Civil Procedure (FRCP) 12(b)(6) for failure to state a plausible claim, and challenges standing under FRCP 12(b)(1). The parties' familiarity with the record is assumed, and the complaint is dismissed under Rule 12(b)(6) with leave to amend. The Court need not take up standing at this time.

As alleged in the FAC, ROK is a mobile video game that can be downloaded from the iTunes app store and the Google Play store. Dkt. No. 29 ¶¶ 3, 4. The goal of the game is to build up virtual resources, and battle with other players to gain territory. *Id.* ¶¶ 8, 9. ROK is free to download, but players can accumulate resources more quickly through in-game pay-to-play opportunities. *Id.* ¶ 5.

Plaintiffs allege that Lilith tricked them into buying in-game currency (the gems) to spend on the pay-to-play games. Specifically, plaintiffs say that Lilith misrepresented the chances of receiving valuable items for games that required gems to play, secretly sponsored some players and gave them free in-game resources, and failed to enforce the terms of service, which allowed some players to share their accounts among two or more people, and made the game more difficult and more expensive for players following the rules. *Id.* ¶¶ 10-14.

Plaintiffs brought claims under the California Consumer Remedies Act, Cal. Civ. Code § 1750, et seq., the California Business and Professions Code, Unfair or Unlawful Business Practices, Cal. Bus. & Prof. Code, § 17200, et seq., California Business and Professions Code, Unfair or Unlawful Contest or Sweepstakes, Cal. Bus. & Prof. Code, § 17539.1, et seq., California's False Advertising Law, Cal., Bus. & Prof. Code §§ 17500, et seq., and breach of the covenant of good faith and fair dealing. *Id.* ¶ 15. The California state law claims are alleged on behalf of a putative national class of ROK players. *Id*. ¶ 141.

Rule 12(b)(6) is governed by well-established standards. *See McLellan v. Fitbit, Inc.*, Case No. 3:16-CV-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). To meet the requirements of Rule 8(a) and Rule 12(b)(6), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), on the basis of plausible and non-conclusory allegations of facts, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because some of the claims in the FAC sound in fraud, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A "pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."

*United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (internal quotation and citation omitted); *see also McLellan*, 2018 WL 2688781, at *1. Conclusory allegations with no "particularized supporting detail" are not sufficient. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016); *McLellan*, 2018 WL 2688781, at *1.

Plaintiffs say that they spent approximately $8,000 to $15,000 each on purchases of bundles and gems to use in the loot box games. Dkt. No. 29 ¶¶ 51-53. On some occasions, they paid to play loot box games called Card King, the Garden of Infinity, and the Wheel of Fortune, 50 or more times at a sitting in the hope of winning prizes. *See, e.g., id.* ¶¶ 58-76. Although none of the games expressly disclosed the odds of winning specific prizes, plaintiffs assumed certain odds based on the use of six-sided dice, 12-spoke wheels, and other features. *Id.* ¶¶ 64-71. Plaintiffs did not win rewards at what they believed to be a statistically expected rate, and concluded that the games were rigged. The ostensible facts alleged in support of this allegation consist mainly of hyperlinks to Facebook and YouTube videos made by third parties to the effect that the games are fixed. *See id.* ¶¶ 59, 65.

Overall, the FAC is long on speculation and short on plausible facts. As the FAC acknowledges, Lilith did not post odds for the ROK games, and so cannot be said to have affirmatively misrepresented anything about that to plaintiffs. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 554 (N.D. Cal. 2019). The videos referenced in the FAC do not provide a plausible factual basis from which to infer rigging or cheating by Lilith. The videos are wholly speculative musings by non-parties, and at several points are largely incomprehensible. Dropping hyperlinks to what is in effect gossip on the Internet is not the type of plausible allegation of fact that Rules 8 and Rule 12(b)(6) contemplate.

Plaintiffs' suggestion that the FAC is plausible based on self-evident statistical truths is overstated. For example, plaintiffs say that the Wheel of Fortune game featured a 12-spoke wheel, which is said to have communicated that players had "a one in twelve chance of landing on the best prize while spinning the Wheel of Fortune in ROK." Dkt. No. 29 ¶ 69. But nothing in the presentation of the wheel alone plausibly indicates that players had an equal chance of landing on a given spoke. As the allegations in the FAC currently stand, in the absence of any express

3

statements about the odds by Lilith, it is just as plausible that the odds of hitting a given spoke were not equal.  Some of the prizes on the wheel were among the most valuable and rare items available to players, and it is not implausible that it would be more difficult to win them even on what was digitally displayed as an equally divided wheel.  Plaintiffs' own characterization of loot boxes as awarding rare and valuable goods on a "very low percentage of occasions" is consistent with the commonplace understanding that rare and valuable items are not equally available as winnings in a game.  Dkt. No. 29 ¶ 39.  None of this is enough to go forward under *Twombly* and *Iqbal*.  *See also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (Court will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

So too for plaintiffs' allegations about account sponsorship and non-enforcement of the terms of service.  The FAC says that Coy was attacked by an account identified as user #27819749, which had a higher power level than Coy.  Dkt. No. 29 ¶¶ 96, 98.  Plaintiffs speculate that this was "another one of Defendant's undisclosed sponsored accounts." *Id.* ¶ 97.  The Court acknowledges that Lilith appears to have apologized for sponsored accounts, *Id.*, Ex. 3, but the FAC does not plausibly state that plaintiffs made any decisions based on an assumption that there were not sponsored accounts, or that they suffered monetary harm from the sponsored accounts.  It is conceivable to lose a game, especially one in which players can buy extra resources, to more powerful players without raising an inference of cheating.  To proceed under Rule 9, the FAC would need to state a particular claim of fraud, not just a claim that one plaintiff lost to a stronger opponent.  *See WellPoint, Inc.*, 904 F.3d at 677.

The terms of service, as incorporated in the FAC, state that players agree not to engage in account sharing, but also state that Litlith "may" suspend an account "in its own discretion."  Dkt. No. 29, Ex. 1 at 6-7.  It is not plausible to assume that Lilith could police every instance of account sharing, and there is no factual allegation in the FAC to that effect it failed to do so as a matter of course.

This is enough to warrant dismissal under the CLRA, UCL, CBPC, and FAL.  The Court declines to dismiss the FAC on the basis of the Communications Decency Act, as Lilith urges.  Plaintiffs did not bring suit for "content" created by third parties, but rather for consumer

deception by Lilith.  That is not a basis of dismissal under the CDA.

The final question is whether leave to amend should be granted.  The Court advised plaintiffs that further amendment might be unlikely if they chose not to amend after the motion to dismiss the FAC had been filed.  Dkt. No. 74.  Even so, the Court will allow one last round of amendment.  Plaintiffs may file and second amended complaint consistent with this order by August 23, 2022.  A failure to meet this deadline will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: August 9, 2022

JAMES DONATO
United States District Judge